In The



Court of Appeals



Ninth District of Texas at Beaumont


____________________



NO. 09-06-255 CV


____________________



THE KANSAS CITY SOUTHERN RAILWAY COMPANY, Appellant



V.



MISSOURI PACIFIC RAILROAD, INDIVIDUALLY AND 


d/b/a UNION PACIFIC RAILROAD COMPANY, UNION PACIFIC 


RAILROAD COMPANY, AND UNION PACIFIC SYSTEM, Appellees






On Appeal from the 163rd District Court


Orange County, Texas


Trial Cause No. 980133-AC






 MEMORANDUM OPINION


Background

 Kansas City Southern Railway Company ("KCS") appeals from a take nothing
judgment entered by the trial court after a bench trial on its claims against Missouri Pacific
Railroad, Individually and d/b/a Union Pacific Railroad Company, Union Pacific Railroad
Company, and Union Pacific System (collectively "Union Pacific"). A bench trial followed
after we reversed and remanded a summary judgment that had denied KCS any relief on its
indemnity claims. Kansas City S. Ry. Co. v. Mo. Pac. R.R., No. 09-04-172 CV, 2004 WL
3021177 (Tex. App.-Beaumont Dec. 30, 2004, no pet.) (mem. op.). In KCS's prior appeal,
we held that its summary judgment evidence raised fact issues about Union Pacific's actual
knowledge of the terms of the indemnity provision in the parties' contract. Id. at *2. 
Because we remanded the case for trial, our prior holding implicitly established that the
indemnity agreement at issue did not meet the express negligence doctrine. See id.; see also
Ethyl Corp. v. Daniel Const. Co., 725 S.W.2d 705, 708 (Tex. 1987). 

 After conducting a bench trial, the trial court entered fourteen specific findings of fact
and one conclusion of law. Among its findings, the trial court found the parties had entered
into the Joint Track Agreement on January 1, 1937, that expired by January 1, 1952. The
trial court further found that on October 10, 1991, the parties entered into the Supplemental
Agreement that retroactively reinstated the Joint Track Agreement. Significantly, however,
the trial court also found that KCS "presented no evidence of actual knowledge which would
cause Union Pacific to be obligated to indemnify KCS pursuant to the Joint Track Agreement
or the supplemental agreement." Based in part on these findings, the trial court reached the
conclusion that "Union Pacific does not have a contractual duty to indemnify KCS."

Issues on Appeal


 KCS raises seven issues in its appeal from the trial court's take nothing judgment. In
issue one, KCS argues that the trial court's application of the fair-notice test to certain
provisions of the contract constituted "an impermissible extension of the applicability of the
test, and it released the Union Pacific from responsibility for its own negligence." Issue two
and issues four through six challenge the legal and factual sufficiency of the evidence
supporting various trial court findings. Issue three and issue seven challenge the legal
conclusion reached by the trial court.

Standards of Review


 A trial court's findings of fact are subject to appellate review under the same legal and
factual sufficiency standards that are applied in reviewing sufficiency of the evidence
challenges to determine whether evidence supports a jury's answer. Ortiz v. Jones, 917
S.W.2d 770, 772 (Tex. 1996); Anderson v. City of Seven Points, 806 S.W.2d 791, 794 (Tex.
1991). On issues upon which the party has the burden of proof, the proper challenge is
"either a great weight and preponderance point or a matter of law point." Raw Hide Oil &
Gas, Inc. v. Maxus Exploration Co., 766 S.W.2d 264, 275-76 (Tex. App.-Amarillo 1988,
writ denied); see also Dow Chem. Co. v. Francis, 46 S.W.3d 237, 241 (Tex. 2001)
(explaining that the "matter of law" legal-sufficiency standard applies when adverse findings
are challenged by a party who, for the finding in issue, had the burden of proof). 

 KCS, as the party asserting a breach of contract claim, bore the burden of proof on its
claims. See Associated Indem. Corp. v. CAT Contracting, Inc., 964 S.W.2d 276, 283 (Tex.
1998). KCS, as the party seeking to enforce an indemnity obligation in a contract that did
not meet the express negligence doctrine, also bore the burden of proving that Union Pacific
possessed actual knowledge of the indemnity agreement's terms. See Storage & Processors,
Inc. v. Reyes, 134 S.W.3d 190, 194 (Tex. 2004) (holding that indemnitee had the burden of
showing indemnitor's actual knowledge of the terms of an employee benefits plan); Dresser
Indus., Inc. v. Page Petroleum, Inc., 853 S.W.2d 505, 508 n.2 (Tex. 1993) ("The fair notice
requirements are not applicable when the indemnitee establishes that the indemnitor
possessed actual notice or knowledge of the indemnity agreement."). 

 Thus, as the party bearing the burden of proof on the factual issues it now challenges
on appeal, KCS must show that Union Pacific possessed prior knowledge of the contract's
indemnity terms as a matter of law; or, show that the trial court's finding regarding Union
Pacific's lack of knowledge of the indemnity provisions in their written agreement was
against the greater weight and preponderance of the evidence. Francis, 46 S.W.3d at 242. 
Evidence is legally sufficient to support a factfinder's determination if it enables "reasonable
and fair-minded people to reach the verdict under review." City of Keller v. Wilson, 168
S.W.3d 802, 827 (Tex. 2005). 

 In evaluating the evidence's legal sufficiency, "we credit evidence that supports the
verdict if reasonable jurors could, and disregard contrary evidence unless reasonable jurors
could not." Kroger Tex. Ltd. P'ship v. Suberu, 216 S.W.3d 788, 793 (Tex. 2006) (citing City
of Keller, 168 S.W.3d at 827); see Am. Interstate Ins. Co. v. Hinson, 172 S.W.3d 108, 114
(Tex. App.-Beaumont 2005, pet. denied). As the factfinder, the trial court determines the
credibility of the witnesses and the weight to be given their testimony. McGalliard v.
Kuhlmann, 722 S.W.2d 694, 697 (Tex. 1986); see also City of Keller, 168 S.W.3d at 819. With respect to reviewing a trial court's legal conclusions, we apply a de novo
standard. See Reliance Nat'l Indem. Co. v. Advance'd Temporaries, Inc., 227 S.W.3d 46, 50
(Tex. 2007). In reviewing factual sufficiency challenges on issues upon which KCS had the
burden of proof, we "set aside the verdict only if it is so contrary to the overwhelming weight
of the evidence as to be clearly wrong and unjust." Cain v. Bain, 709 S.W.2d 175, 176 (Tex.
1986). 


Comparative Contribution and Sole Fault Issues


 The dispute between KCS and Union Pacific arises out of a March 31, 1996, collision
between Union Pacific's train and a motorist, John Keen. While traveling on tracks owned
by KCS, Union Pacific's train collided with Keen's van, resulting in Keen's death. His
beneficiaries sued Union Pacific and KCS. On June 27, 2002, the Keen claimants signed
separate releases, one for Union Pacific and another for KCS. In return for consideration
paid by Union Pacific, the Keen claimants released their claims against Union Pacific. In
return for consideration paid by KCS, the Keen claimants released their claims against KCS.

 We consider issues one through four together because KCS joins these issues together
for argument in its brief. In issue one, KCS asserts that its claim encompassed "indemnity
to the KCS for Union Pacific's negligence, not just for the KCS's own negligence." Issue
two challenges the factual sufficiency of the trial court's finding concerning Union Pacific's
knowledge of the indemnity provisions in the Joint Track Agreement. Issue three contends
that the trial court erred in concluding that Union Pacific had no contractual duty to
indemnify KCS. In issue four, KCS asserts a legal and factual sufficiency challenge to the
trial court's judgment denying its indemnity claim.

 In general, KCS's argument under these four issues concerns its claim for comparative
indemnity. For example, KCS argues that only one of the Joint Track Agreement's
provisions allowed KCS to be indemnified for its own negligence and concludes that "KCS's
claims against Union Pacific primarily concern or trigger indemnity based upon Union
Pacific's own negligence, not that of the KCS." KCS points to the language of section
twenty-one, subsections (c) through (e), in the Joint Track Agreement as provisions that the
trial court should have applied in a case involving the joint fault of both railroads. KCS
complains that "the trial court disregarded the fact that all but one of the KCS's
indemnification claims concerned Union Pacific's own negligence." KCS concludes that the
trial court erred "when it applied the fair-notice test to invalidate all of the indemnification
provisions at issue."

 Union Pacific contends that KCS failed to perfect for appeal any complaints
concerning the trial court's failure to grant KCS relief on its claims for comparative
contractual indemnity. Union Pacific points to the fact that KCS failed to file a post-judgment request for findings of fact and conclusions of law. Because Union Pacific's error
preservation argument would resolve the factual sufficiency challenges presented in these
issues, we first address whether KCS's factual sufficiency issues have been waived. 

 The Joint Track Agreement between KCS and Union Pacific contained terms that
contemplated a division of damages between them in the event that both were at fault. On
appeal, KCS acknowledges that only one of the provisions in the Joint Track Agreement,
section 21(f), (1) "provides terms allowing the KCS to be indemnified for its own negligence." 
KCS argues that the trial court should have, but did not, consider whether sections 21(c), (2)
21(d), (3) and 21(e) (4) of the Joint Track Agreement required the trial court to divide jointly
caused damages. KCS also contends that under section 21(b) (5) of the Joint Track Agreement,
it should be reimbursed for all damages attributable solely to Union Pacific. 

 The contractual provisions of section twenty-one, subsections (c), (d), and (e) of the
Joint Track Agreement are triggered by findings of joint fault and generally establish the
terms under which the respective railroads would contribute to pay for various types of
casualties, depending upon the circumstances that had caused the particular loss. For
example, under subsection twenty-one (c) of the contract, losses under certain circumstances
were to be divided equally between the parties. Subsections twenty-one (d) and (e), on the
other hand, contemplate that losses under other circumstances were to be divided between
the railroads based upon a comparison of their respective track use during the month in which
the casualty occurred. Each of these contractual comparative indemnity provisions required
joint fault and a determination of the classification of the railroads' employees involved in
causing the particular loss.

 In contrast, section 21(b) is triggered upon a finding of Union Pacific's sole fault. To
the extent that KCS contends this subsection was breached, KCS bore the burden of securing
a fact finding that established its claim under the terms of this provision of the contract. 

 Upon receipt of the trial court's findings of fact, KCS bore the burden of requesting
any additional factual findings necessary to the resolution of its comparative contractual
indemnity claim or its sole fault claim in order to establish which of the subsections of the
Joint Track Agreement applied. Tex. R. Civ. P. 298; Pinnacle Homes, Inc. v. R.C.L.
Offshore Eng'g Co., 640 S.W.2d 629, 630 (Tex. App.-Houston [14th Dist.] 1982, writ ref'd
n.r.e.). After the trial court entered its findings on May 17, 2006, KCS made no request for
additional findings of fact regarding the elements of its contractual comparative indemnity
claim. None of the trial court's findings speak to the classifications of the respective
railroad's employees that might have been involved in causing the casualty nor to whether
either of the railroads' employees were at fault in causing the Keen collision. Resolving
whether the contractual comparative indemnity provisions in the contract were applicable
depended upon resolving these disputed fact issues. KCS also made no additional request
for findings of fact regarding Union Pacific's sole fault, a finding necessary to resolve
whether Union Pacific breached section 21(b) of the Joint Track Agreement.

 To avoid waiving its contractual comparative indemnity claims and sole fault claim,
absent evidence establishing the disputed facts as a matter of law, KCS was required to notify
the trial court after receipt of the trial court's initial findings through a request of its need for
additional findings to address these claims. Pinnacle Homes, 640 S.W.2d at 630; see also
Tex. R. Civ. P. 299. KCS did not do so. We conclude that KCS did not preserve its factual
sufficiency complaints concerning its contractual contribution indemnity issues or its sole
fault issue for appellate review. Having reviewed the evidence, we further conclude that the
evidence does not establish as a matter of law that Union Pacific's fault proximately caused
the underlying collision with Keen's van. As a result, we overrule issues one through four.

Union Pacific's Knowledge of Indemnity's Terms 


 In issues five and six, KCS challenges the legal and factual sufficiency of the evidence
supporting the trial court's finding that Union Pacific was not shown to have had actual
knowledge of the indemnity's terms. KCS contends that Union Pacific ratified the contract
by "performing under the contract or by otherwise affirmatively acknowledging it." KCS
argues that it presented "irrefutable evidence that Union Pacific had notice and knowledge
of the indemnity provisions at issue and had ratified the indemnity agreement as a result of
similar past crossing accidents on the very joint tracks at issue."

 In support of its argument, KCS points to evidence it presented during the trial
concerning four prior lawsuits on its tracks that had arisen from crossing accidents. The prior
crossing accidents occurred on (1) November 27, 1979; (2) February 20, 1980; (3) October
11, 1983; and (4) July 17, 1985. KCS asserts that evidence about how the railroads handled
these four prior crossing cases established Union Pacific's actual knowledge of the terms of
the indemnity obligations in the Joint Track Agreement. (6)

 The evidence presented at trial regarding the four prior crossing cases is not extensive. 
Only one of the prior cases, the February 20, 1980 case, appears to have been tried to verdict. 
The November 27, 1979, and October 11, 1983 crossing accidents were concluded by
settlements, but the release documents were not offered or admitted, and no one testified
about the terms of these two settlements. The record does not reflect how the July 17, 1985
crossing accident case was resolved.

 Two Union Pacific witnesses related their limited knowledge about these four cases. 
"Rick" Walton, who became Union Pacific's general solicitor for the Southern Region in
1989, testified that he saw nothing in the documents pertinent to these four crossing cases
to indicate that Union Pacific provided KCS indemnity in connection with them. He further
testified that nothing in the documents reflected that the defenses in these four cases were
provided to KCS by Union Pacific based upon the terms of the Joint Track Agreement. 
Walton indicated that occasionally, Union Pacific "would agree to defend a case, for
example, and sort it out later as to who really owed the case, depending on what was
adjudicated in the case at trial." With respect to whether Union Pacific indemnified KCS in
the four prior collision cases, Walton testified: "There's nothing that I've seen that says
anything about indemnity."

 Norma Davenport, an attorney for Missouri Pacific beginning in 1986, became a
general solicitor for Union Pacific's Southern Region in 1993. Davenport distinguished
between a railroad providing another railroad a defense and a railroad providing another
railroad indemnity; she testified, "I could defend you, but if I lose, you're the one that's going
to pay. I'm just the lawyer." Finally, Davenport testified that generally, Union Pacific's
decisions to provide a defense to another railroad were based on:

 the facts of the case, which played a big part, if the allegation was that the
other railroad did something either overtly or by omission that was a cause of
the accident, then we did - did not indemnify them or defend them. If it - if
it was - if they had done what they were supposed to be doing and somebody
was suing both and we were on their track, we would defend them.


Neither Walton nor Davenport discussed the settlement terms of any of these four prior
crossing cases.

 With respect to the collision cases that resulted in settlements, we agree with the trial
court's finding that the information about these cases is insufficient to establish that they
placed Union Pacific on notice of the specific terms of the contract provisions in issue. With
respect to the February 20, 1980 crossing case, which was tried to a verdict, the final
judgment recited: "That none of the negligence causing the occurrence in question was
attributable to the Kansas City Southern Railway Company." As a result, we fail to see how
the February 20 crossing case evidences Union Pacific's knowledge of the indemnity terms
in the Joint Track Agreement. Finally, with respect to the July 17, 1985 crossing accident
case, nothing in the record shows an indemnity payment by Union Pacific in connection with
it.

 With respect to defense costs, the trial court was entitled to believe that the defenses
in these cases were extended under Union Pacific's policy to extend defenses in some cases,
rather than under the provisions of the Joint Track Agreement, which during the time period
involved, had expired by its own terms. In our opinion, evidence that Union Pacific provided
a defense on prior occasions under circumstances that are not the same as those presented in
this record does not compel the conclusion that Union Pacific possessed prior knowledge of
the terms of the Joint Track Agreement's indemnity provisions. Further, the fact that the
Joint Track Agreement was no longer in force at the time relevant to these four prior crossing
cases is another factor supporting the trial court's conclusion that these four cases did not
establish Union Pacific's actual knowledge of the Joint Track Agreement's indemnity terms. 
 In this trial, the trial court heard evidence that defenses could be and were extended
by Union Pacific to other railroads as a matter of trial strategy. The trial court's finding of
no actual knowledge of the terms of the provisions in issue, on this record, is not so against
the great weight and preponderance of the evidence as to be manifestly unjust. We conclude
that it was within the trial court's discretion to find that: "The Kansas City Southern Railway
Company presented no evidence of actual knowledge which would cause Union Pacific to
be obligated to indemnify KCS pursuant to the Joint Track Agreement or the supplemental
agreement." We overrule issue five.

 In issue six, KCS argues that the public policies embodied by the fair-notice test do
not apply where a party, through its conduct, ratified the terms of an indemnity obligation. 
As authority to support its argument, KCS relies principally on Missouri Pacific Railroad
Company d/b/a Union Pacific Railroad Company and William R. Slone, III v. Lely
Development Corporation, 86 S.W.3d 787 (Tex. App.-Austin 2002, pet. dism'd). In Lely,
the Austin Court of Appeals held that Union Pacific, the indemnitee under the circumstances
of that case, was entitled to recover indemnity from its indemnitor, Lely Development,
because Union Pacific's summary judgment evidence proved that Lely Development had
actual knowledge of the contract's indemnity obligation. Id. at 793. Significantly, the Austin
Court noted that the following facts were uncontroverted: 

(1) Lely accepted contractual benefits by using the railroad crossing since
1974; (2) Lely signed the 1982 addendum requiring higher insurance coverage
to cover the covenant to indemnify; (3) Lely met Union Pacific's demand for
indemnity in the 1994 lawsuit; and (4) Lely did not attack the indemnity clause
during the 1994 lawsuit or thereafter, waiting until this second lawsuit and
demand for indemnification to attack the clause as unenforceable. 


Id. 

 In the case before us, however, Union Pacific disputed that it met the indemnity
demands previously made by KCS in connection with the four prior crossing accident cases
discussed above. While Union Pacific acknowledged defending those cases, it disputed that
it indemnified KCS for KCS's fault in any of those cases and asserted that Union Pacific had
not defended KCS based on the terms contained in the Joint Track Agreement. In this case,
KCS did not offer evidence regarding indemnity payments in any of the four prior crossing
cases or prove that Union Pacific paid an increased insurance obligation to insure against its
contractual indemnity obligations. The circumstances surrounding the defenses of the four
prior crossing cases are also distinguishable because Union Pacific's agreements to defend
these four prior cases were undertaken at a time when the Joint Track Agreement had
expressly expired, and there was also evidence that allowed the trial court to infer that the
defenses were not undertaken under the Joint Track Agreement's terms. 

 We conclude that Lely is factually distinguishable from the case before us. The Austin
Court of Appeals resolved Lely on uncontested facts; the facts before the trial court in this
case were contested. Because Lely is distinguishable, the trial court did not fail, as argued
by KCS, "to follow and apply the only Texas authority before it on this issue[.]"

 In summary, KCS, as the party seeking indemnification under the Joint Track
Agreement had the burden of establishing actual notice or knowledge of the terms of the
indemnity provision. See Reyes, 134 S.W.3d at 194. (7) In reviewing KCS's factual sufficiency
challenge, we should "set aside the verdict only if it is so contrary to the overwhelming
weight of the evidence as to be clearly wrong and unjust." Cain, 709 S.W.2d at 176. In this
trial, whether Union Pacific indemnified or defended KCS on prior occasions because it
recognized a contractual obligation under the terms of the Joint Track Agreement was a
disputed fact issue. The trial court, acting as the factfinder, determined the credibility of the
witnesses and the weight to be given their testimony. McGalliard, 722 S.W.2d at 697; see
also City of Keller, 168 S.W.3d at 819. We conclude that the evidence before the trial court
enabled it to reach the findings under review. City of Keller, 168 S.W.3d at 827. We
overrule issue six.



Conclusion of Law Challenge 


 In issue seven, KCS challenges the trial court's legal conclusion that "Union Pacific
does not have a contractual duty to indemnify KCS." Based upon the terms of the parties'
contract and in light of the trial court's factual findings, the trial court reached the proper
legal conclusion.

 Under Ethyl, the Texas Supreme Court held that the express negligence doctrine, a
rule that applies to indemnity agreements, requires that "the intent of the parties must be
specifically stated within the four corners of the contract." 725 S.W.2d at 708; see also Fisk
Elec. Co. v. Constructors & Assocs., Inc., 888 S.W.2d 813, 814 (Tex. 1994). The purpose
of the express negligence rule "is to require scriveners to make it clear when the intent of the
parties is to exculpate an indemnitee for the indemnitee's own negligence." Atl. Richfield
Co. v. Petroleum Pers., Inc., 768 S.W.2d 724, 726 (Tex. 1989). "Either the indemnity
agreement is clear and enforceable or it is not." Fisk, 888 S.W.2d at 815. With respect to
the indemnity provisions of the Joint Track Agreement, the trial court concluded that the
indemnity provisions of KCS's contract failed to comply with the express negligence test. 
We agree with the trial court that the Joint Track Agreement does not comply with the
express negligence doctrine established in Ethyl. Ethyl, 725 S.W.2d at 708.

 Because the indemnity provisions do not meet the express negligence test, KCS had
the burden to prove that Union Pacific possessed actual knowledge that the terms of the Joint
Track Agreement were intended to shift to Union Pacific an obligation to pay for KCS's own
negligence in order to avoid the application of the fair-notice test. Dresser, 853 S.W.2d at
508 n.2. With respect to KCS's proof showing that Union Pacific was aware of other
provisions in the Joint Track Agreement, under the "fair notice test," KCS bore the burden
of proving that Union Pacific possessed an actual awareness of the terms KCS asserted that
Union Pacific had breached. See Cate v. Dover Corp., 790 S.W.2d 559, 562 (Tex. 1990). 
Whether Union Pacific possessed actual knowledge of the terms allegedly breached was a
fact issue resolved against KCS by the trial court.

 Because KCS failed to prove Union Pacific's actual knowledge of the terms at issue,
these provisions of the contract were unenforceable. Dresser, 853 S.W.2d at 511. Based on
its factual findings, we conclude the trial court reached the proper legal conclusion that
Union Pacific had no contractual duty to indemnify KCS under the Joint Track Agreement.
Ethyl, 725 S.W.2d at 707-09 (holding indemnity agreement that fails to meet express
negligence test was unenforceable). We overrule issue seven. 

 Having resolved the issues raised by KCS against it, the judgment of the trial court
is affirmed. 

 AFFIRMED.

 ___________________________

 HOLLIS HORTON

 Justice


Submitted on May 8, 2008

Opinion Delivered July 17, 2008

Before McKeithen, C.J., Kreger and Horton, JJ.
1. Section 21(f) provides: "Damage Due to Defects in Joint Line: [KCS] shall not be
liable for damages as to trains of the Trustee or of the property carried on the trains of the
Trustee, or of property damaged by the Trustee on or adjacent to the Joint Line, or as to
employe[e]s or passengers of the Trustee, or any other persons on the trains or cars of the
Trustee, or persons on or adjacent to the Joint Line injured by the Trustee: - caused by or on
account of any alleged or real defect in the Joint Line, whether such defect be patent or
latent, and whether or not due to fault in maintaining the Joint Line."
2. Section 21(c) of the Joint Track Agreement provides: Fault of Sole Employe[e]s of
Each Party: Damages caused solely by the fault of one or more exclusive employ[e]s of one
party hereto, concurring with the fault of one or more exclusive employe[e]s of the other
party hereto (with or without the concurring negligence of a joint employe[e]), shall be
divided as follows: Each party shall assume and bear the damages as to its own trains and
persons and property thereon. All other damages shall be divided equally between the parties
hereto."
3. Section 21(d) provides: "Fault of Joint Employe[e]s Solely: If damages be caused
solely by the fault of one or more joint employe[e]s, each party hereto shall bear the damages
as to its own trains and to persons and property thereon, and all other damages so arising
shall be divided between the parties on the car-mileage basis of the month and year in which
the casualty occurs."
4. Section 21(e) provides: "Fault of Joint Employe[e] Concurring With Fault of Sole
Employe[e] of One Party: If damages be caused by the fault of a joint employe[e] concurring
with the fault of a sole employe[e] of one party, all damages as to trains and persons and
property thereon of the party at fault shall be borne by said party, and all other damages shall
be divided between the parties on the car-mileage basis of the month and year in which the
casualty occurs."
5. Section 21(b) of the Joint Track Agreement provides: "Fault of One or More
Exclusive Employe[e]s of One Party: Damages caused solely by the fault of one or more
exclusive employe[e]s of one party hereto shall be borne solely by such party."
6. Union Pacific argues that the Joint Track Agreement had expired by its terms during
the time periods related to these four crossing cases and notes that the Supplemental
Agreement that retroactively reinstated the terms of the Joint Track Agreement was signed
in 1991. As a result, Union Pacific contends that its actions during this time period is not
evidence of its recognition of the indemnity provisions in the expired agreement.
7. The actual knowledge requirement also extends to the terms of any contractual
comparative indemnity provisions. Ethyl Corp. v. Daniel Const. Co., 725 S.W.2d 705, 708-09 (Tex. 1987) ("Parties may contract for comparative indemnity so long as they comply with
the express negligence doctrine set out herein.").